My name is Sid Hardy. I'm here representing Wal-Mart Stores, Inc., Wal-Mart, Louisiana, LLC, and Willa Hobby. The Bankruptcy Court in this case abused its discretion and committed reversible error when it refused to stop Tobin Parker from pursuing his personal injury lawsuit after he had failed to disclose that asset to the Bankruptcy Court and its creditors. As Judge Jones said in NRA Superior Crew Boats, Mr. Parker was allowed to have his cake and eat it too. Judge Jones recognized from language in the same case that such an outcome would suggest that a debtor consider disclosing his assets only after he is caught concealing them. The remedy fashioned by the court, by the Bankruptcy Court, puts Tobin Parker in exactly the same position that he would have been in had he properly disclosed his assets to the Bankruptcy Court and to the creditors. This court, in a long, long line of cases, has consistently judicially stopped debtors who have failed to disclose assets to the Bankruptcy Court. This court repeatedly has rightfully noticed that the integrity of the Bankruptcy Court and the Bankruptcy Court system is at stake in cases like this, and the consequences of allowing a debtor who intentionally failed to follow the rules and failed to disclose to proceed would do devastating harm to the Bankruptcy System's integrity. I would like to discuss with the court why judicial estoppel was appropriate in this case and why the lower court abused its discretion in failing to judicially stop Mr. Parker from pursuing this lawsuit. Judicial estoppel was no question, there's no question that it was an appropriate remedy in this case. The Bankruptcy Court itself had no problem finding that all the points had been met. In fact, the Bankruptcy Court said there are compelling reasons or the reasons supporting judicial estoppel are compelling. But in spite of that, the Bankruptcy Court said, well, for equitable reasons, we're not going to grant that remedy in this case. Now, the court well knows the elements, the position inconsistent with the prior position when Mr. Parker represented to the Bankruptcy Court or impliedly represented that he had no assets other than those which had been disclosed, that was an implied misrepresentation and was inconsistent with his present position of currently pursuing a lawsuit. The court accepted the prior position. The court granted him bankruptcy. It gave him the benefit of that equitable remedy, protected him from his creditors, and allowed and discharged him. He was discharged after that. The failure to disclose was not inadvertent. And the court has a two-pronged test, as the court well knows. It has to have no knowledge of the underlying lawsuit, and you would have to have no motive. Obviously, he was aware of his lawsuit, and obviously there was a motive, the motive being that debtor could keep the money from the undisclosed asset as opposed to submitting it to the bankruptcy state and having distributed to the creditors to whom he owes money. In this case, Mr. Tobin Parker actually knew he had a duty to disclose, and I think a timeline would be helpful. The Chapter 13 was filed in February 2009. It was confirmed in January 2010, and he was ordered to pay in the neighborhood of $700 a month to the bankruptcy court. He had an accident in December 2010, and in April 2011 he met with a personal injury lawyer and he signed two contracts, one for the tort case, one for the workers' compensation case. Both of those contracts had identical language to this effect. Client represents that he currently is not in bankruptcy and that he does not contemplate filing for bankruptcy. On each contract, Mr. Parker initialed the top of the page indicating he'd read it, and he signed both contracts indicating that he was not in bankruptcy, he didn't contemplate bankruptcy. Now, this was at the same time that he was paying $700 a month to the bankruptcy court. I would suggest it was probably his biggest financial obligation that he was paying on a monthly basis, and he chose not to disclose it twice. Now, 18 months later in December 2012, Tobin Parker was outed in his deposition. He was outed when I say outed, I mean it was discovered by the defendant that he did have a personal injury claim that had not been disclosed. Now, his lawyer wrote about a two-line letter to the trustee and to the bankruptcy lawyer saying, in essence, he has a personal injury lawsuit. It didn't go into detail. It didn't say it could be worth $500,000. It gave him no information whatsoever. But that was not sufficient according to the bankruptcy rules. The bankruptcy law requires specific conduct to alert creditors and the bankruptcy court. Everybody has to be in on it. You have to file a schedule with the court.  And it's distributed to the creditors so they can see where the assets are. An amended plan would be adopted through which the bankruptcy trustee could distribute the assets. Now, in this case, the schedule was never amended to show the lawsuit. He was discharged in April of 2014 about well over a year after his lawyer wrote the single letter to the trustee, and he still didn't disclose to the court. What did that letter say? I missed part of what you said. It said, in essence, it's in the record P-15. It says, basically, we want to notify you that Tobin Parker has a personal injury lawsuit pending. I think it was literally a two-sentence letter to the trustee and to his bankruptcy lawyer. Nothing about the nature of the claim. Nothing about the value. And the schedule was never amended. It was never incorporated into the plan. The creditors never found out about it, nor did the bankruptcy court. But you're saying that the creditors shouldn't get anything now. I'm saying that in the prior case, the Flugents case, a remedy was fashioned in which the trustee was allowed to pursue the lawsuit, retain counsel if necessary, and make the creditors whole. That was an equitable remedy that they fashioned in Flugents, and it had been done in prior cases as well, in the Reed case, for example, which was a Chapter 7 case. So, no, what I'm not suggesting is that the creditors go empty-handed because this court has already fashioned a remedy. Well, that's what I'm – it seems to me what the bankruptcy court did is the remedy is the same as if the schedules had been – as if it had been disclosed, except it wasn't resolved in an adversary proceeding, I guess, or the trustee's not going to pursue it, but any recovery would go to the creditors. So what's the – what is the difference? Well, the difference would be in the message, so to speak. The difference would be in the integrity of the bankruptcy court, of the equitable nature of the bankruptcy proceeding. The difference would be in following the rules and in doing what's right and the duty to disclose one's assets. Judge Jones, as I said before, pointed out, if the debtor, who in this case – and once again, the facts in this case are more egregious in terms of Mr. Parker's conduct than the other cases. So if we were to send it back, what would happen that would be different? If you grant the relief requested, it would reverse and direct the trial court to authorize the trustee to pursue the personal injury lawsuit and stop the debtor who failed to disclose from pursuing the lawsuit. How would that affect Walmart? Walmart would obviously pay whatever it took to satisfy both the creditors and the attorney's fee that it took to reach a resolution of the case. This court before, where the remedy has been used, that's the approach this court has taken. But I don't understand. I'm still missing. What difference does it make if he sues you or the trustee sues you, as long as the money goes to the creditors? Well, the difference is, is that we have a debtor who the court – who is engaged in conduct that this court has repeatedly held it could not tolerate because of the message it would send. And as Judge Jones says, the message would be you don't have to disclose until you get caught. Then you can disclose. So if this court – But here, the remedy, he doesn't get to keep the money. I mean, I assume that – how large is – how much is the unsecured creditor's claims here? His claims, unsecured creditor's claims, unsecured – I don't know. The total debts were about $52,000. What? $52,000. I'm sorry. So he would get – if he got a large vert, he would get some money. Oh, he would get a good bit of money. Let's say, for example, 500 – they had – it had been disclosed. It had been on schedule. It said the value of the asset, $500,000. Well, under the court's rules, $250,000 would go to the trustee. You would suddenly have an asset – I mean, you would suddenly have a solvent estate. You would have a bankrupt estate of approximately $280,000 with debts of $52,000. Everybody could be made whole. I would suggest to the Court that once the Department of Education, who had deferred because it's non-dischargeable and they wanted to get paid in full, when they see that, they say, well, yes, I think we'd like to get paid. At least my creditors want to get paid. I thought the bankruptcy judge's order specifically mentioned student loans, that if he were to get a recovery, this would go to unsecured creditors, including the student loans. The remedy fashioned by the bankruptcy court put Parker in exactly the same position that he would have been had he disclosed it. If he had done the right thing, he would have turned out the same way as with this Court's remedy. Didn't you tell me that Walmart would, too? That Walmart would what? Would be in the same position. Yes. Walmart would be the same. No, it would not. It would not, Your Honor. I'm sorry. Because Tobin Parker would pursue his lawsuit, and if it's $500,000, he would obviously collect the remainder of that. What does that matter to Walmart if the trustee pursued it? What difference does it make? Walmart doesn't get to keep the – if you lose, you don't get to keep the money. You have to pay somebody. Yes, and Walmart would pay the creditor. What difference does it make if you pay the trustee or the individual? The difference? Walmart. To Walmart. To Walmart, well, obviously the debts are less than $500,000, so that's one obvious benefit to the creditor. Of course, to the alleged tort fees.  The bottom line, you think the trustee will not be as active in pursuing the case as the individual? I believe the trustee would have every incentive to pursue the case. I just don't understand why Walmart is up here spending attorney's fees to vindicate the bankruptcy system. This matter has been up before this court no less than eight times, and the court has repeatedly ruled in less egregious circumstances than this that because of the damage that would occur. Why is Walmart bankrolling that crusade? What's the financial interest in Walmart to pay to do that? I'm very curious. It would have stopped the lawsuit. So you're saying the lawsuit would not go forward? The lawsuit would go forward to the extent to collect and pay the creditors. But he would not get? The debtor. Walmart would not have to pay anything beyond the $52,000? And the attorney's fee, presumably. So there is a difference to Walmart? Yes, there's a financial difference. Okay. Yes. Okay. Yes, there would be a financial difference, no doubt. So you're asking, bottom line, to stop the debtor from anything beyond his other debts? Yes, Your Honor, which was done in fusions. So that's punishment for nondisclosure? It's a deterrent. It's punishment. And once again, as Judge Jones said, if you let this stand, it means it suggests you shouldn't disclose unless you get caught concealing. Then you disclose, no harm, no foul. Let me ask you this. Does a bankruptcy judge have discretion to apply judicial estoppel or not? The bankruptcy court does have that discretion. So how did the bankruptcy court abuse its discretion here? We believe it abused it, and I'm out of time for my 15 minutes. Can I keep going? Yes. The bank, you have an abuse of discretion when the court applies or relies on erroneous factual findings, misapplies laws to the facts, or erroneous conclusions of law. We believe in all three areas the court touched on that here. In this case, we believe the court touched all the bases. For example, the no harm, no foul. You've answered the question. Yes. Thank you, Your Honor. Mr. Raley. May it please the Court, I'm Robert Raley, and I represent Tobin Parker in this appeal. I would like to start off and address the last question about how or why Wal-Mart contends, and I'll answer it based on their brief, that the bankruptcy judge abused its discretion. My reading of Wal-Mart's brief leaves me with this conclusion. They postulate three components where they say that the bankruptcy judge abused his discretion. The first component is that there were four instances in which the bankruptcy judge committed legal error, and if I'm permitted to do so, I will briefly discuss each of those instances. Wal-Mart's brief also indicates that there are two instances where there was an erroneous factual finding, and I will address that if permitted. And thirdly, Wal-Mart postulates that the remedy that was provided is based upon a legal error. Now, the first issue, I will go back and address these four alleged errors of law. First, Wal-Mart has stated in its brief, and I think counsel stated, that the failure to invoke judicial estoppel would, quote, go against the purpose of protecting the integrity of the court. In Wal-Mart's brief, it didn't offer any specific jurisprudential authority or really argument that I understood to say this policy consideration is some kind of trump card. If we can say this policy consideration is somehow injured, game over. I believe, beyond that, that that issue is more or less consumed in the determination as to whether the elements of judicial estoppel have been met. The answer to the question of what is the judicial estoppel remedy attempting to protect, I think, gives us guidance on this specific issue. Because especially the second element subsumes this. Because what is it we're trying to protect from? Well, those three elements tell us exactly. To protect us from a debtor against whom judicial estoppel is going to be asserted from taking a position that is clearly different in a prior occasion than today and the court accepting it before. So that is what we are trying to protect from. That is subsumed in judicial estoppel. The Aetna case and other jurisprudence goes on to talk about why that acceptance by the court is so important in relationship to determining whether or not we have to come to the point of meeting this element and so forth. We also know very clearly that the bankruptcy court has jurisdiction not to apply judicial estoppel just because the elements are met. So I think Wal-Mart's argument is backwards. I think the issue of some kind of a front to the integrity of the judicial process, that's dealt with in the elements. Then we know in addition to that or after that, there must be an equitable evaluation. And you don't get disqualified from that equitable evaluation because you make some sort of policy invocation. Finally, in that vein, where do we do? We come to the peppercorn issue, how much, how little, and so forth. I don't think we need to engraft some sort of secondary element onto the analysis that is almost not measurable. The second issue of legal error that I think that Wal-Mart urged in its brief was to say that the debtor did not have clean hands. The debtor was coming to court seeking equity, and you can't give a debtor equity that doesn't have clean hands. Now, first let's understand Wal-Mart went back and reopened the bankruptcy case. Wal-Mart filed a declaratory judgment action, and Wal-Mart asked the bankruptcy court to give an equitable remedy to Wal-Mart. Wal-Mart had the burden of proof, and in meeting that burden of proof, it has to not only meet the four elements, it has to show sufficient evidence that would indicate that there's no reason under a bankruptcy court equitable analysis not to apply. The point here is this. In its brief, Wal-Mart cites Little Creek. And Little Creek is the case in this court that was an early post-bankruptcy code case that ruled that there is a basic good faith requirement to file a case and to utilize the equitable machinery of the court, which is what the bankruptcy is all about. Now, I'll touch back on this again, but we have to remember Little Creek was talking about dealing with core matters, using the core jurisdiction of the bankruptcy court, just filing it and being here to begin with in a Chapter 11, getting a plan confirmed and so forth. And clearly a declaratory judgment action, which can be filed outside of a bankruptcy court and is not a cause of action arising under bankruptcy court, can only have related to jurisdiction in a bankruptcy court. That's not even remotely related to the whole analysis and rationale of Little Creek. So the bottom line is I think Wal-Mart is conflating the general requirement for good faith in obtaining the bankruptcy exercise of arising under and arising in jurisdiction with the fact that it has tried to ask the court to grant it an equitable remedy. Third, I believe that Wal-Mart says that if the court committed error by considering the effect on the tort fees, what the bankruptcy judge said really was I'm not going to consider the effect on Wal-Mart, that that's not going to be what drives the result. This court has had some pretty strong language about that. As a matter of fact, influgence said that wrongful tort fees would be favored over an innocent creditor by the mere happenstance of the debtor's independent nondisclosure turned equity on its head. Providing the personal injury defendants with the windfall they seek is neither necessary nor desirable. So I certainly don't think the judge's statement about not letting the effect on Wal-Mart drive his decision is certainly not reversible legal error. Finally, and in the same vein, in the brief, Wal-Mart said the judge committed reversible error by considering the impact on creditors. This circuit has clearly indicated that that is not the law, that part of the bankruptcy law and the purpose of it is to ensure maximum distribution to the creditors, and the bankruptcy court should consider that. The next basis for Wal-Mart's contention that the judge committed error is its argument that there was factual error. And we know that to satisfy the clear error test, the findings of facts must be plausible, and conversely, if we do come to the conclusion that a trial judge committed error in finding of facts, the court must be left with the record as a whole viewed as a definite and firm conviction that a mistake has been committed. That's waste management. I submit that there's no way one could review this record on the facts and come to that conclusion. As a matter of fact, if I may, very briefly, this issue comes to the forefront in connection with Wal-Mart's contention that Judge Norman committed reversible error on the facts by finding that things in his court were run differently than in Judge Callaway's court. Specifically, in Judge Callaway's court, interest was never paid on unsecured claims. Debtors were allowed to classify student loans separately and treat them differently, that the trustee closed the cases without contingent injury claims being resolved after verifying that there was no resolution, judgment or settlement, that the debtor would be discharged in those circumstances, that additionally personal injury attorneys were not required to file a motion to be employed until the settlement. And mainly upon the trustee's testimony who was serving at the time, Ms. Sykes, it was very clear, quietly, very frank, and probably a little uncomfortable for her at a couple of points. Her testimony clearly supports those findings of fact that were made by the bankruptcy judge. And finally, Wal-Mart in their brief contended that there was error in finding facts when the bankruptcy judge says nothing would have been changed. And the issues involved in that conclusion is that unsecured creditors would have received nothing more. And that's just true. In fact, besides the student loan, if I remember correctly, I think in the record is the trustee's final accounting, and it was not much money, probably $3,800 or something along with that. So judicial interest on that is not a significant amount of money. I'm not saying that's a defense, but that just puts it into perspective. Secondly, the question of whether the student loan folks came in. What would a student loan creditor have done? He could have come in and said, I'm aware that there's this personal injury case. It may or may not lead to any money. It may or may not lead to money while the case is being administered. But if it does, I want more money. And, you know, if they would have come in, if Mr. Parker had filed the amendment to the schedules and they would have admitted their plan, all they would have gotten is something to the effect, well, if their money comes before the case is over, then maybe you can get your money. I will say I don't really accept that premise, though, because specifically Section 1322b-5 provides authority for a debtor to treat long-term claims, claims that would extend beyond the bankruptcy, by paying them according to their contract or maybe not even paying, but treating them according to the contract. And I'm not really sure. As a matter of fact, I have grave doubts, though I didn't find jurisprudence on this. I have grave doubts that a student loan lender that has a claim that's 10 years can come into a bankruptcy case and say, Debtor, the bankruptcy code told you you could treat us this way, you could classify us separately and deal with this pursuant to the underlying contract, but we want you to change that now. I just don't see how that can happen under the law when that is a specific right granted to a debtor. Also, there was an issue about Nissan getting paid less. Nissan got paid the value of the secured claim, which is set forth in 1325a-5ii. That's what bankruptcy code provides for Nissan. You get your secured claim and you get your tail interest. And it would have never made any difference whatsoever whether Mr. Parker had a personal injury claim or lottery wins or anything. They get paid what the bankruptcy code says they get paid, not more and not less. That's how you treat that secured claim. The bottom line is that especially if we look back at the testimony of Ms. Sykes, the comments of the Court, there's no way that I can see that we could conclude that his findings of facts on those issues is clearly wrong. Something just is, there's no question about it, which is the standard which I so inappropriately stated, if you'll excuse that. And then finally, Walmart in its argument says that the remedy is based on legal error. And this is how that goes. That argument has a presupposition in it that the only way money can come out of a Chapter 13 case is through a payment to the trustee in connection with a confirmed plan that is paid out in connection with that confirmed plan. I don't believe there's any law to that effect here in this circuit. Walmart didn't cite any. I would first say that Flugents, that's exactly what happened. The case had been closed. The plan had been paid out, but money was to come into that case and then dispersed. Okay? It wasn't a planned payment. It was money that was recovered that was going to be dispersed. Dispersed, I assume, pursuant to Section 350 of the Bankruptcy Code, which I'll address in a moment. There is also jurisprudence within the Fifth Circuit in bankruptcy cases. One of them is in the Southern District of Texas decided by Judge Isker, and he said that a court can vest supplemental authority in a Chapter 13 trustee to disperse additional funds. Also in the Southern District of Texas, Judge Boehm, in the Wilburn case, addressed a situation where there was a class action recovery. Some cases were still pending. Some cases, I think, had been dismissed. Some cases had been completed. He provided the remedy of simply reopening the bankruptcy cases and pursuant to his order distributing that money that came in on that class action case. There is a case from the Middle District of Georgia where, just like I'm suggesting here, they were faced with this. Money came in after the case was completed. The bankruptcy court, then affirmed by the district court, says, you know, this provision about the plan payments, that's just not implicated. We're not talking about confirming a plan. So it doesn't matter that it's too late to amend the plan. Now, I'm running short on time, so I will just say that I believe that Section 350 of the Bankruptcy Code clearly gives the authority to make that distribution. It's not chapter specific. And certainly Section 105, in connection with it, gives it more momentum to do it and that's covered in the memorandum that I filed. I would also suggest, and again, this is covered in the memorandum that I filed, that if that remedy is impossible, we don't have jurisdiction because the only jurisdiction available would be related to If getting that money cannot possibly be given to creditors or Mr. Parker or whatever, then it can't conceivably affect the outcome of the case. So there's no jurisdiction. That is an alternate argument that I would make. Very briefly, in the last few things that I would like to say is I would like to point out this. Remember, in this case, Mr. Parker called his lawyer and told him about this, his bankruptcy lawyer. In this case, Mr. Parker's tort lawyer sent a letter, advised the trustee of the case and that he represented him, and shortly thereafter, the trustee sent a letter back to Mr. Bailey telling Mr. Bailey and Mr. Parker and Mr. Rennicks that the schedules contained the pledge of the personal injury case and that 50% had to be given to the trustee and gave specific instructions for Parker to cooperate with Bailey and for Bailey to continue and tell her if they got the money and sent it to her. Thank you. Thank you, sir. You're welcome. Five minutes on revoke. Okay. Had the debt been disclosed, the outcome would have been different. The trustee, in her trial testimony at page 136 and then again on 140 and in other places, said in response to a question, it said, well, what would you have done had you known there was a million-dollar case out there, a potentially million-dollar case? And she said, well, we would have obviously held it open. I would have filed whatever it took so that the claim is not abandoned, the asset is not abandoned. We would have held it open until there had been a resolution. So that's what would have happened had it been disclosed. When the bankruptcy court said it wouldn't have made a difference, we respectfully submit that that was erroneous and that was an erroneous application of a fact to law. I would also point out that this court, in a long series of cases, Flugents, NRA Superior crew boats, Vioxx, NRA Goldstein, probably seven, eight, nine more, consistently has upheld that judicial estoppel is an appropriate remedy. Did they say that the district court abused its discretion in failing to apply judicial estoppel? In two separate cases, yes, Your Honor. In the following cases, this court has held there was an abuse of discretion in not applying judicial estoppel. NRA Superior crew boats, NRA Coastal Plains, and NRA Flugents. I would also submit to the court that in those cases, the fact pattern was not nearly so egregious in terms of the debtor's conduct. And you've cited all of them. It was in this case. Yes, sir. It was suggested that he told his lawyer, Well, this court has consistently held that reliance on a lawyer is not a defense. That would be NRA Vioxx. That would be NRA Coastal Plains. That would be NRA Flugents. And U.S. X-Rail Long versus GSDM-IDEA City, LLC. So there's been four separate cases in which the debtor, in which typically they say, Oh, I told them and they didn't do it, or they told me I didn't have to do it, and it hadn't worked. This court has consistently said, given what's at stake for the integrity of this court, it doesn't work. It does not work. At the end, it's all about equity. It's all about equity. What about, is there a case of that where the trustee was notified? Yes, where the trustees were notified. That's an abuse of discretion, nevertheless. They said it was, the trustee was notified in NRA Superior Crew Boats, NRA Coastal Plains. Both those cases, the trustee was advised of a claim. And in neither of the cases did the Fifth Circuit say, Okay, well, that was good enough. In both cases, they said it's an abuse of discretion not to judicially stop the claimant, the debtor. You know, on the remedy available in terms of allowing a debtor to pursue the lawsuit and then the trustee coming in after the fact and somehow taking from the debtor enough money to pay off the creditors, I've never seen it done in any jurisdiction, much less the Fifth Circuit. Although in Flugents and in Reed, the court has authorized the trustee to proceed, which we discussed earlier. But to allow a debtor to do it, it's never been authorized. It's never been done before, so there's no law on it. I would just point to the court that some of the legal impediments would be in Mr. Parker's order of discharge. It prohibited any attempt from any debtor to come after him for these debts. And number two, the Bankruptcy Code 11 U.S.C. 1322A1 provides that a debtor has no responsibility to make funds from specific assets available for distribution if the plan makes no provision for payments from these assets. So that's been the holding. And finally, I've got unclean hands. The court found that Mr. Parker, his testimony was untruthful in many respects, not entirely truthful, that he was well coached, that his veracity was dubious, and we would suggest that that represents that he has unclean hands and should not benefit from an equitable remedy. So we would ask the court to reverse. Thank you very much. Thank you.